## No. 14,403.

BOARD OF COUNTY COMMISSIONERS OF ARAPAHOE COUNTY
*v.* MORRIS.
(89 P. [2d] 248)

Decided March 27, 1939.

Mr. C. C. CONANT, Mr. BYRON G. ROGERS, Attorney General, Mr. REID WILLIAMS, Assistant, for plaintiff in error.

Messrs. VAN CISE, ROBINSON & CHARLTON, for defendant in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appeared in reverse order in the trial court. They are hereinafter referred to as Morris and the county respectively.

■ Fort Logan, a military post owned by the United States, is located in the county. Morris, an army officer in active service, stationed there, owns and operates an automobile. Our statutes require that a car owner, at the time of procuring his annual license, shall pay the tax due on his car. Morris demanded his license without payment of the tax, claiming exemption therefrom. His

claim was refused. He then paid under protest and brought this action to recover. A special demurrer for defect of parties, based on failure to join the county clerk, was overruled, as was also a demurrer for want of facts. The county answered and moved for judgment on the pleadings. That motion was overruled. Trial was to the court and Morris had judgment for the tax, i. e., $7.80, and costs. To review that judgment the county prosecutes this writ.

Under the eleven assignments several interesting questions are raised and ably argued. Among these are the extent of jurisdiction granted by Colorado to the United States in transferring title to the reservation; the extent to which that grant was accepted; and the particular classification, ad valorem, privilege, property, excise, or what not, of the tax in question. All these, with the numerous authorities cited as controlling or enlightening, we have carefully examined and duly considered. We confine ourselves however, to the third assignment, i. e., "That the trial court erred in overruling the motion for judgment on the pleadings," which we think good.

The United States acquired Fort Logan by virtue of an act of our General Assembly and a deed executed by the Governor in assumed conformity therewith. The act was S. B. 287, p. 339, S. L. 1887, and appears as sections 22 and 23, chapter 168, '35 C. S. A. The deed was introduced in evidence but is not abstracted. The title of the act reads, "An Act to cede to the United States jurisdiction of the state over a site for a military post at or near the city of Denver, in the state of Colorado, and to release the same and other property of the United States from taxation." The subject of release of property from taxes is thus mentioned in the title and specifically limited to the site "and *other* property of the United States." The first section provides for the granting of jurisdiction over the tract "for all purposes whatsoever," but is immediately followed by a reservation to the state of certain jurisdiction to serve civil and criminal process. The

specific subject of taxes is mentioned only in the second section. It releases the tract and its improvements and all property therein or thereunto appertaining "belonging to the United States." Nothing more. We observe in passing that if the grant of jurisdiction in the first section "for all purposes whatsoever" divested the state of all, or any, rights of taxation of property, public or private, therein located, the entire second section was superfluous.

Amended section 6, article X, Colorado Constitution, adopted in November, 1936, directed the General Assembly to classify motor vehicles and impose "a graduated annual specific ownership tax" thereon, in addition to the "state registration or license fees," and payable at the same time. S. L. '37, p. 326, c. 93. At the session following, the General Assembly passed such an act. S. L. '37, p. 328, c. 94. This it did by way of amendment of certain sections of chapter 16, '35 C. S. A. These sections are a part of our "Uniform Motor Vehicle Act," chapter 122, p. 485, S. L. 1931 (Art. 3, c. 16, '35 C. S. A.) ; hence said chapter 94 became a part of that act. This specific ownership tax on class B vehicles (to which the Morris car belonged) is based upon a percentage of the "factory list price," graduated downward according to years of service to the fifth, and fixed at $1.50 for each year thereafter. Vehicles "not to be operated or driven on the public highways of the state" are exempted therefrom, but pay the usual ad valorem tax, as other property. The tax in question is uniform throughout the state. On class B it is collected by the county clerks, but on class A (vehicles used as public carriers) it is collected by the state tax commission.

Morris says in his complaint that he intends to operate his car on the streets and highways of the state and that he requested of the county clerk a license so that he could do this unmolested. No authority is vested in the county clerk to issue such a license save for registered cars. Application for the license must be accom-

panied by written application for registration and certificate of title. '35 C. S. A., c. 16, §2. One who operates a registered and numbered car without such certificate of title is guilty of a misdemeanor. Id., §4. One purpose of the act is to add security to motor vehicle titles. *Daniel v. Surratt*, 97 Colo. 43, 46 P. (2d) 903. Had the clerk issued a license to Morris without payment of the questioned tax he probably would have been liable to fine and imprisonment. '35 C. S. A., c. 16, §157. Certain reciprocal interstate privileges are conferred by our laws. '35 C. S. A., c. 16, §115. Thereunder registration in Colorado carries with it like rights and privileges in many other states. The law conditions the payment of the questioned tax neither on the situs of the car (within the state) nor the residence of the owner.

It must be remembered that here neither the county nor the state made or makes any demand upon Morris. So far at least as this record discloses he may keep or store his car on the reservation, or run it within the boundaries thereof, until it is worn out, without license, registration, certificate of title, or payment of any kind of tax or fee. If not subject to the tax, and no one could issue him a license without its payment, he could operate his car at will over the state's highways and, if interfered with, plead his immunity. Many people are, under certain conditions, exempt from arrest, but no officer is charged with a duty of furnishing them certificates to that effect. Morris simply comes of his own volition and demands a certificate of title, registration of his car, number plates, and license, authorizing him to use, unmolested, the highways of the state, and conferring upon him all the rights, privileges and protection appertaining thereto, not only in Colorado, but in her sister states as well. The county answers, "Gladly, but, like others similarly situated, you must pay a so-called specific ownership tax of $7.80, otherwise we are forbidden by law to grant your request." His sole reply is, "Not me. I am a military officer of the United States,

stationed at Fort Logan, a federal military reservation, and when not driving over your highways and enjoying these privileges, or temporarily detained outside, I store this car within that reservation and your tax, which is an ad valorem tax, can not reach me there.''

For the determination of this controversy we think it immaterial what jurisdiction Colorado granted the United States over Fort Logan, or what the United States accepted, or within what classification, if any, this tax properly falls, or whether the county clerk is a party, or that the deed to the government of the United States was admitted, or that it exceeded the power conferred by the act authorizing it.

We omit comment on any case relating to the state's taxing authority over ordinary personal property, privately owned, and kept and used, or stored, on United States military reservations situated within the state, as inapplicable for reasons too obvious to require specification. No case holding exempt from any kind of state tax on motor vehicles operated generally over state highways, any automobile privately owned and used for private purposes by any resident of a military reservation located in such state, has come to our attention.

We think that under those facts relating to the use and operation of automobiles of which, at this late date, courts should take judicial notice, and under our Constitution and statutes, the situs of a car for license and taxing purposes is where the legislature says it is and that, clearly, the situs of this car is not Fort Logan. We think Colorado, barring certain instances not here in question, has the sole right to determine the conditions under which any one may register automobiles on her books, secure her certificates of title thereto, her numbers and licenses, the interstate and intrastate rights and privileges which these confer, and operate them, clothed therewith, on her highways. For instance, she might lawfully provide that this tax could be collected in any county where a car which had not paid it was found in

operation. She might impose it upon all foreign cars, or only upon those which had paid no similar tax in states from which they came. She might exempt therefrom only those which produced receipts showing license fees imposed and paid in the state of the owner's residence. She has duly declared, as one of those conditions, the payment of this specified ownership tax. Its classification is therefore unimportant.

We find it necessary to cite but one authority in support of the foregoing, *State v. Storaasli,* 180 Minn. 241, 230 N. W. 572, which was later affirmed by the United States Supreme Court. *Storaasli v. Minnesota,* 283 U. S. 57, 51 Sup. Ct. 354, 75 L. Ed. 839. In every essential particular this case is directly in point. In one, however, the facts there were more favorable to the claimant than those in the instant case because there the commander of the military reservation had set up a system of automobile registration and the officer's car had been registered thereunder with a certificate and license plates which the owner at all times carried. Again, in that case Storaasli was not the moving party. He asked nothing of the state. It was proceeding against him for the collection of the tax. The Supreme Court of Minnesota held the tax both a property and a privilege tax. The Supreme Court of the United States held it, as applied to Storaasli, a privilege tax. Under either classification Storaasli had to pay, and under either Morris must pay. Counsel for Morris attempts to distinguish between the Minnesota statute and ours. Some of these distinctions relate to specific provisions in the one and inevitable conclusions in the other. These need not be noticed. There the tax went into the highway fund. Here it goes to the general fund. In Minnesota the tax only is paid. In Colorado both tax and license fee are imposed. If the state has the power to impose the tax we fail to see where any distinction arises from the fact that it is divided or from the use to which it is put. Morris is not concerned with what the state does with the money. *Car-*

*michael v. Southern Coal Co.*, 301 U. S. 495, 57 Sup. Ct. 868, 81 L. Ed. 1245.

All essential facts above recited appear in the pleadings and the motion should have been sustained.

The judgment is accordingly reversed with directions to so order.

Mr. Justice Francis E. Bouck not participating.